It is my honor and privilege to be representing Derrick Bates before you. This is the third time I think at least we've argued the very same facts and, in our opinion, the very same law before this Court. I want to just briefly give you a factual history. I don't believe that the District Court gave Mr. Bates all of the reasonable inferences that he should have been given, but be that as it may, I think it's relatively indisputable that Derrick Bates was given. There had, unbeknownst to them, been some kind of a gun disturbance in the neighborhood that involved young black men. A witness told police that responded that, hey, these guys are somewhere around the corner, and gave a description of somebody in a black or blue shirt and black pants, and that clearly did not match Mr. Bates was wearing a red shirt. The officer pulled around the corner and, at gunpoint, ordered these two young men to the ground. At that point, they were handcuffed and awaited as the situation developed. This Court's already determined that that stop was okay, so that's not an issue, that even though we didn't match the description, that was fine. But what happened is that twice now the District Court has said because Mr. Bates did not immediately go to the ground upon being ordered to, that there was arguable probable cause to arrest him for interference with official acts. So what happened is Mr. Bates sees two officers with guns, stands and asks what's going on, is not very happy, because he's obviously hasn't done anything wrong, and it takes him several seconds to go to the ground where he's immediately handcuffed and held. At that point during the investigation, police get called to another suspicious black man and interact with him, and during that Officer Richardson's interaction with this other young black man, witnesses from the street come out and tell the officer present with Mr. Bates, look, these guys didn't do anything, they were just walking, I watched them, this is crazy, it's understandable why they're so upset. And at that point, the second officer, Officer Juppin, took the handcuffs off Mr. Bates, and they stayed, and it looked like the situation was going to be resolved at that time. But then, and this is, sorry? Did the officer say anything to Mr. Bates at that point? He did not. I mean, he didn't say you were under arrest, you weren't under arrest, they were being detained at that point for officer safety. Wasn't there, I mean, when the handcuffs were taken off, I thought there was something in the record that he said something to the effect you're free to go? He didn't. So he said at that point, take the cuffs off, Bates, you're free to go. Correct. And then what happens is some radio traffic, and it's found at the appendix at page 46, the appendix for this case, there's mounds of appendix because of the prior case, we didn't reprint it all, but there is a Sierra Rapids Police Department memorandum investigative summary dated June 8, 2016. That's how old this case is, by the way. This all happened in May of 2016. And at that point, it is relayed that they've now cleared the second young black man that they have detained. That has nothing to do with the issues on appeal, right? Excuse me? Well, what is the issue on appeal? The issue on appeal is whether or not there was arguable probable cause for interference with official acts. Initially? No. That's been resolved. I didn't mean by the stop. Not by the stop. By the failure to obey the command to stop. Correct. Not the taking to the ground. It was the failure? Failure to immediately go down to the ground and comply with the police order. No, but it wasn't just going down to the ground. It was... There was no struggle with him. They stopped and they turned around and they kept walking. They stopped. They looked. They talked. They said why. They took several steps. Why don't we get to the legal issues? And the legal issues in this case are important, but I want to make sure that this point gets made. And that is, the officer, after Bates is released, Officer Richardson on the radio says, they're probably going to get interference, though. I see it's unfortunate, but when I say stop, it means stop. So the legal issue, as Judge Loken has recused me to address, is whether or not there was arguable probable cause, whether those extra steps that he took... Let me ask you, what is the controlling law? The controlling law, we believe, is in this case... No, no. I mean, what jurisdiction's law controls... The state of Iowa. No, that's wrong. Well, the state of Iowa controls whether there's the elements of interference with official acts. And there's... No, you know, that's not right. The Fourth Amendment, you have a 1983 Fourth Amendment civil claim. Correct. It turns on whether there was probable cause to arrest. Correct. Which is governed by, in the 1983 context, federal law. Correct. So in other words, if Iowa's, in the state law claims, if Iowa doesn't agree with arguable probable cause being the standard, that's irrelevant. I completely agree. Okay, now what's the controlling authority? The controlling authority, Your Honor, is set forth in the briefs and the... I submit, and you tell me why I'm wrong, lawyers is the controlling authority. I couldn't agree more. Lawyer was the controlling authority back when this case was decided in 2021. It wasn't even cited in Urban, was it? It was not, but it was the controlling authority. Because it wasn't argued, because everybody argued Iowa law. Well, lawyer, but if you look at the new case that the state, or I mean that the city relies on to get this second bite at summary judgment, that's the Wilson case. After summary judgment was denied, they were granted a second summary judgment. Again, our argument in the brief is they should have never gotten the second bite at the apple, because there was no new law. All the law was established and had been argued. But summary law was not discussed in Urban. Urban was responding to the arguments as made. Correct. And... It's not law of the case. In any event, Your Honor, the arrest, you know, the subsequent then arrest for interference was based on these several steps. And Iowa law on interference says it has to be active resistance. And that's citing lawyer. That's... Lawyers doesn't say that. Lawyer says, and if I could read from the decision in State v. Wilson. The next question is whether Wilson was actually engaged in interference with official acts by resisting arrest. Examination of the body cam footage, body cam video footage, is the key. At the outset, we note the Stanford for establishing a violation of interference with official acts statute is generally fairly low, as noted in lawyer. The key question is whether the officer's actions were hindered. You see, Wilson was a suppression case. I understand. Many of the Iowa cases were conviction appeals. That's... This is a 1983 civil action for damage. Absolutely. And so, arguable probable cause as a matter of federal law is the governing standard. Yes. And so, you say there has to be active resistance. But lawyers don't say that. The lawyer indicates that it has... The actions have to be hindered. I have a quote from lawyers. Okay. We have found no case holding that the use of such force is required to establish a violation. No, it's hindered. They go on to say that the younger of the two brothers in that car could be... That he... And that was... This is also a 1983 claim. And that they lose their... They lose their 1983 claim because the younger brother told the older brother, don't obey that cop. And hindered the officer. Well, okay. Hindered is the key. Yeah, but that's not the way you bargained this case. But hindered is the key. You bargained force. And, Your Honor, this was laid out when we appealed previously. I mean, I think these issues were hashed out before this court previously. Whether that court got it right... What court? This court, that panel of this court, got it correct or not, that decision should not have been disturbed by a subsequent summary judgment motion. There was literally no new law, no new facts, no new nothing to justify filing a second summary judgment motion. All right. And... Okay. What's your fallback argument? The fallback argument is that under this, that Wilson changed nothing. And that Wilson is clearly distinguishable from this case because in Wilson... Wilson is not the governing law. I understand. But Wilson was the keystone to getting this case re-litigated. And getting a second bite at the apple after summary judgment had already been reversed. Now you're back to the issue where there's a question whether you preserved it or are you still on a merit. Pardon? You argued two things in your brief. The district court shouldn't have allowed this to happen at all. Correct. And second, the district court was wrong on the merits. You've been arguing the merits. Correct. How are you jumping back to the other issue? Because then I want to know how you... I'm trying to interact with you and answer your questions appropriately. Well, but if you're going to the first issue, my question is how did you preserve it? We preserved it by appealing and filing a notice of appeal and indicating that we were contesting the grant of the second and subsequent summary judgment. Now, you didn't say that. Now, you make a reference to the statement of issues on appeal. I know what that document is. Yes. Did you put it in the addendum? We did not put that exact language in the addendum. Did you put it in the appendix? And I'll concede, because my time's running low, that if contesting the second and subsequent summary judgment is not enough to contest the city getting a second bite at the summary judgment apple, I can't change that. So I... Well, you said that at the merits. That is what it is. But I agree, and I'm trying to get to the merit point of when this second summary judgment happened, nothing changed. It was the exact same facts. And the exact same... I think the Court is acting on remand with directions to consider a variety of things, including issues that weren't presented in the first appeal. The only issues that weren't presented in the first appeal were issues regarding Iowa Code Chapter 670 immunity, which the Court didn't address this time either. The merits of arguable probable cause were not decided. The decision was that on that summary judgment record, it couldn't be decided as a matter of law. I concede that. And nothing's changed. I'd like to reserve the balance of my time. I apologize. I have gone so long. May it please the Court. Counsel? Counsel. My name is Trish Kropp, and I represent the Appalese, Tyler Richardson, Wayne German, and the City of Cedar Rapids in this matter. I'd like to address two issues with you during our time here today, one being why we view the Wilson case that came out after what I refer to as Bates I, this Court's determination of the first appeal. Why we believe that case is important. And also, if I have time, I would like to briefly address the law of the case doctrine that Mr. Bates cited in his reply brief, because due to the fact it was in a reply brief, we did not actually get a chance to brief that issue to you. Counsel, could I ask a question about what the district court found? I noted that, as I understand it, the district court, when you filed your motion for permission to seek summary judgment a second time on the issue that we had said there was still material facts on, you didn't tell the court the case that you were relying on. And so the court just said, well, I can't tell, so I'll let you go ahead and file that motion. But then in its summary judgment order, it never addresses that issue again. Is it your view that good cause was found in the first order, or should it have been addressed also in the second, in the opinion regarding summary judgment, to say, oh, yes, I think Wilson changed? Because I didn't see anything in the district court's opinion telling us whether the district court thought that you were correct, that Wilson changed the legal landscape sufficiently to warrant a second summary judgment motion. I think when the court granted leave to file the second summary judgment motion, that was it making its determination that there was good cause for the second summary judgment motion. I think the good cause was not just the Wilson case, because we had not actually articulated that case at that point for reasons that are explained in the brief. It was also to allow the city to raise the statutory immunity defenses that were left. Right, right. So there were things that were still open for remand. It just seems like there were several. That doesn't seem controversial to be able to sort of address what's still left in the case. And I'm just trying to sort of piece together what the district court's view was as to the summary judgment motion made anew on the issue that was no longer at issue on remand, or no longer open. I'm sorry. Sure. As I read the district court's opinion on the second summary judgment motion, the district court agreed with the city that Wilson kind of changed the landscape here, and that the cases that were cited as authority in Bates 1, this court's determination, needed to be reviewed through, I guess, what I call the lens of Wilson, keeping Wilson in mind. And when that's done, keeping Wilson in mind, it becomes clear that there really aren't any disputed material facts, and that the conduct of Mr. Bates, which, by the way, was not just failing to go down on the ground immediately, as was suggested by Mr. Frerichs, it was also continuing to walk away after being lawfully commanded to stop. And when you watch the video, you'll see they were not only walking away, they were walking around a corner where they were about to be obscured from view, and the officer wouldn't be able to see them. And you also have to keep in mind, when you're looking at this case, that there was the possibility that a weapon had been discarded somewhere in the neighborhood. And in looking at those facts, I know in your briefing you say, Wilson did not change Iowa law. And as I read, it's the very last issue that the Supreme Court addresses in a relatively long case about whether or not this person, Wilson, I think it was Wilson, whether there was sufficient evidence of interference with official acts. Sites to Lawyer, which also relies on Iowa cases. I'm trying to figure out what's new. I mean, you can say, all right, well, we've thought of a new theory, a legal theory, because it made us think of it in a different way. But is that enough to say that the law has changed sufficiently that you can revisit the same set of facts? Is that a change in law that's sufficient to get another, well, you're opposing counsel calls it a second bite at the apple, whatever you call it? We're not actually taking the position that Wilson is a change in law. We view it as a clarification of the law that already existed that we didn't have the first time around. In particular, the Iowa Supreme Court in Wilson said, you know, the evidentiary standard for a conviction for interference is fairly low. And when you think about the fact that what we're looking at in this case is not even a standard for a conviction, we're looking at a standard for arguable probable cause. The standard for interference has got to be really low. Well, if that's not new, though. I mean, either that's new, and okay, we'll look at it, or it's just sort of what the Iowa Supreme Court has said in the past, and they're just sort of restating what they've applied before. So I'm trying to find the sort of daylight between those two things in your argument. Sure. I think the cases prior to Wilson, I think it's difficult to tell exactly how much of a hindrance is necessary. You know, I think you could always argue that, you know, even walking away from an unlawful stop, which we don't have here, you know, hinders officers. But we didn't really know where that line is between, you know, acceptable conduct and you're hindering to the point that it's an interference with official acts. And go ahead. I just think these facts are so different. She's, this person is trying to get, they're trying to handcuff her, and she's, what were the words, twisting and wriggling and fighting, and it took them a few minutes to actually get that. That sort of isn't surprising, I guess, under Iowa law, that an active resistance like that would be interference with something that this person knows they're trying to do, which is handcuff her for an arrest. Right. I guess I'm not seeing the factual overlap that gives such illumination to this particular case based on those facts. Well, I think in this case there's no facts in the record to show that Mr. Bates did not know he was, we were trying to detain him. So it's similar to Ms. Wilson knowing she was being arrested in that respect. I also, when I read the Wilson case, it appeared to me from what the court said that she was actually, had both her hands in handcuffs already when she started that twisting and jostling. They may have had to try to kind of tweak them to make them more comfortable, but I believe she was already in the cuffs, and the reason that's significant to me is, you know, it appears to be less of a hindrance if you're just kind of moving around when you're already cuffed than if I'm not cuffed and I'm really flailing. So I think the hindrance in Wilson was not a huge hindrance, and so I think it's instructive in this case, and it's also instructive in this case because the Iowa Supreme Court in Wilson characterized Ms. Wilson's conduct as not cooperative. There's been a lot of argument in this case about, you know, failure to cooperate by itself is not sufficient, but in the Wilson case they said she was not being cooperative. Therefore, she extended the arrest for only a few minutes, and that was not to convict her, not just to arrest her. Well, in this case, just so I understand where the interference occurred, so the officer says, stop, stop. These two guys turn around, so presumably that's compliance at that point. That takes a total of 10 seconds, according to the video, and the officer says, yeah, I mean you guys. Then they turn back around and take a few steps. Is that the interference? I think the interference is, yeah, he yells stop, and they stop and look at him, and he tells them it's you guys, and they start walking again. So that's the starting the walking. That's the start of the interference. Well, and then he yells, get down, get down, pulls his gun, but that only takes, that was 20 seconds between saying, yeah, you guys, and they're on the ground. Within 20 seconds they're on the ground. So there's 20 seconds of interference is what we're talking about. I believe, I don't have the number right in front of me. I know it's in my notes somewhere, but I think it was 20 to 30 seconds. It was not a, I mean this whole thing happened pretty fast, and because of the fact that they walked around the corner, I believe what Officer Rickardson testified to in the deposition that's in the record is, you know, it escalated because they'd gone around the corner, and I didn't know what was going to happen. I had to get under control. So what do we make of the fact that after they're handcuffed, they're then released and told that you're free to go, and it's only after Bates is joined with the police officers and using profanity with them, after he's told he's free to go, that then he's arrested? Sure. I mean, why wasn't he arrested as soon as he committed the interference? Well, one thing, the officer that decided to make that charge, as you saw in the video, leaves to go to talk to somebody else. And I think at the point when Mr. Bates is told he's free to go, there's still an investigation going on, and officers are not, I'm sure you know, required to charge immediately. So I think maybe, and I'm speculating here, there wasn't time to sit and think about should we charge him, should we not charge him. Let me put it this way. If they had not only stopped, but then persuaded Richardson of what was later concluded, resulted in not handcuffing him, would that have affected the investigation? Could you say that again? I'm sorry, Your Honor. If they had cooperated, for lack of a better word, and quickly persuaded Richardson that although their presence there looked suspicious, they were not in fact involved, would that have affected the progress of the investigation? Oh, I think certainly. Of course. Yeah, it would have gone much more quickly. It would not have resulted in guns. Let me go on. When did you ever argue that Blair went to the district court, that Blair is controlling authority on the 1983 issue? If we did, I'm not aware of it, Your Honor. So if that is in fact true and you didn't argue it, what do we do with that? Well, I think the reason that Blair was not argued is because I will agree that arguable probable cause is for— No, no, no. I'm talking about on the merits. Blair says, We suspect, for example, that giving a false name to an officer or providing an oral warning to a suspect so that he may hide evidence to avoid apprehension may well constitute a violation of 719.1, even though the conduct is entirely verbal and non-threatening. Accordingly, we hold that Timothy's arrest was lawful because there was probable cause under federal law to believe he violated it. And in addition, the officer gets qualified immunity. If you had argued that to the district court, we wouldn't have this appeal, would we? Might not have had the first one. I guess I don't know. You know, I think I'd be speculating and say— All right. Is that not controlling? I mean, one thing Wilson did was point to lawyers' analysis. I think it's certainly controlling now. It's crystal clear. You know, I— Wilson isn't controlling because that's not federal law. Sure. But it may be controlling when we get to the state law issue. That requires a separate showing of federal jurisdiction and so forth. Sure. I guess in my view, when we're looking at arguable probable cause, we're looking at whether the officer had a reasonable belief that, you know, the crime had been committed by the person. But opposing counsel argued all the way there's got to be force. And we disagree with that. Well, I know, but all you did was argue those prior cases which go back and which are quite ambiguous on that question. Your lawyer clearly said that may eventually get you away from a conviction under Iowa law, but it doesn't refute arguable probable cause to arrest for verbal and non-forceful injury. Right. I do think— Here we are for the second time because nobody made the right argument, it seems to me. I do think that there were cases that were cited the first time around that did not involve force. I know Sullivan was one of them. Yeah, but we went through Lewis. Sure. And, you know, if Lewis was the law, then opposing counsel was seeing the test properly, and so a trial may be required. That's all we decided. By the way, there is no limitation on the number of summary judgment motions one can file before trial. That's my understanding. So I don't understand why you even needed a motion for leave to file it. Just go back and say the record as Iowa law properly developed and federal law properly developed demonstrates we don't need a trial. I will, just to clarify that for you, Your Honor, I will tell you that there was a trial scheduling conference held and the magistrate that oversaw that conference I believe instructed the city to file a motion for leave before filing a second summary judgment motion. I think that's mentioned in the brief somewhere. But if not, it should be in the record of the notes of the trial conference. And with that, I think my time is up. Any additional questions, I'm happy to answer, but if not, I'll keep things moving. Thank you, Your Honor. Verbo? The key, I think, that we've talked about is the second and subsequent. There is no formal limit, but there are guidelines that the courts have put for simply giving unlimited summary judgments. Our court or just courts in general? I think this court, well, no, actually, I take it back. There is an unpublished opinion, Kelly v. Icahn. That's number 21-1769. Is it in the brief? Okay. So the bottom line is there was active resistance in the Wilson case, and they cite exactly the other case, the Donner case from 1976. It says, in Iowa, for there to be probable to violate this law, in 1976 they said there has to be active resistance. Who said which? Donner. It's State v. Donner. It's cited in our brief as well. I know, but is it a Supreme Court or a court of law? Iowa Supreme Court. Iowa Supreme. And what was the issue? Conviction, suppression, or a private civil action? Conviction. So it's not relevant. I mean, it's relevant, but it's not even close to the mark in terms of controlling. But it's instructive with respect to whether or not there's arguable probable cause if, according to Iowa law, there has to be active resistance. We discussed that in lawyer. And we said we don't find a case that says there has to be. Most of the cases involve something you can call force or at least active. Where is interpreting Iowa law? No, it was interpreting arguable probable cause on arrest by an Iowa police officer. An Iowa statute. And necessarily that involves looking at the statute. And it says, just talking back, instructing someone else not to cooperate with a police officer can be enough. But there's no instruction here. All they simply did was take a few steps in a matter of seconds. As Judge Lloyd pointed out, this is a matter of seconds. The police needed cooperation. They were seeking someone who had shot up a neighborhood. And then the need for rapid identification was critical to public safety. There's no facts in the record about anybody shooting up a neighborhood. I don't know where that even comes from. What there was was some kind of dispute, arguably, where somebody said they saw a gunner. There's nothing about shooting up a neighborhood or anything like it. It was just somebody visually saw a gun, and it was amorphously labeled a gun instance. So, I mean, the immediacy just simply wasn't there. Thank you. I see my time's expired. Thank you, counsel. Thank you. The case has been thoroughly briefed and argued, and we will take it under advisement. Thank you.